**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

GRANDE VILLAGE LLC, et al.,

    Plaintiffs,                 CIVIL NO. 14-3495(NLH/JS)

    v.                        **OPINION**

CIBC INC., et al.,

    Defendants.

---

<u>Appearances</u>:

DAVID L. BRAVERMAN
BENJAMIN ALEX GARBER
PETER J. LEYH
BRAVERMAN KASKEY, P.C.
ONE LIBERTY PLACE, 56TH FLOOR
1650 MARKET STREET
PHILADELPHIA, PA 19103
*Attorneys for plaintiffs*

ADAM K. DERMAN
DAVID M. DUGAN
WOLFF & SAMSON, PC
THE OFFICES OF CRYSTAL LAKE
ONE BOLAND DRIVE
WEST ORANGE, NJ 07052
*Attorneys for defendants*


<u>**HILLMAN**</u>, District Judge

    This is a breach of contract case involving various loan and mortgage documents secured for a retail space in New Jersey. Defendants filed a motion to dismiss. For the reasons explained below, defendants' motion to dismiss will be granted in part and denied in part.

I.    **FACTUAL BACKGROUND**

Plaintiffs, Grande Village LLC ("Grande Village"), Grande Properties, LLC ("Grande Properties"), Willingboro Town Center Urban Renewal North, LLC ("Willingboro Urban Renewal") Willingboro Town Center North Manager, LLC ("Willingboro Manager"), William T. Juliano and Thomas E. Juliano, brought breach of contract claims against defendants CIBC Inc. and Canadian Imperial Bank of Commerce, New York Agency ("CIBC").

On September 14, 2007, CIBC extended a $6.2 million loan to Willingboro Urban Renewal and Willingboro Manager.  On March 15, 2008, CIBC extended a $32.2 million loan to Grande Properties. On November 10, 2008, CIBC made an $8.4 million construction loan to Grande Village (the Grande Village Loan), with an initial advance of $6,365,000, to finance the development of a shopping center, the Grande Village Center, evidenced by a promissory note and mortgage ("Grande Village Mortgage").  The Grande Village Mortgage enabled Grande Village to obtain "subsequent advances" up to the sum of $2,034,500, in order to pay for "approved costs," including capital improvements and renovations to the property and leasing costs.  The Loans are secured by mortgages, as well as performance and payment guaranties executed by plaintiffs William T. Juliano and Thomas E. Juliano.

2

On July 20, 2011, plaintiffs and CIBC entered into an agreement pursuant to which the loans were cross-defaulted and cross-collateralized (the "cross-collateralization agreement"). Pursuant to the cross-collateralization agreement, the cross-collateralized principal balance on the loans was $46.8 million. Also, on July 20, 2011, CIBC and plaintiffs entered into three separate loan modification agreements pursuant to which the maturity date for each of the loans was extended to May 10, 2013.  Plaintiffs were permitted to extend the maturity date of the loans in one-year increments provided that they satisfied a variety of conditions set forth in the agreements between the parties.  The maturity date was then extended from May 10, 2013 to May 10, 2014.

By May 7, 2013, Grande Village had procured two commercial leases for tenants at the Grande Village Center (the "Leases"), both of which required the construction of significant tenant improvements to fit out the property within a set timeframe, at the risk of penalties.  On May 7, 2013, Grande Village delivered a budget to CIBC which provided a financial plan for the construction of the tenant improvements required under the Leases, predicated upon Grande Village receiving approximately $1,980,000 in a subsequent advance.

3

On May 13, 2013, plaintiffs state that CIBC responded by "tentatively" approving the budget and improvements, but conditioned disbursement of the Grande Village Loan proceeds on the sale of the Grande Village Center.  At the time, none of the loans between CIBC and Grande Village, Grande Properties, and Willingboro Urban Renewal were in default.

Subsequent advances under the Grande Village Loan are governed by paragraph 2 of Exhibit B to the Grande Village Mortgage ("subsequent advance provision"), which states, in part, the following:

> Approved Costs. Lender has allocated a portion of the Subsequent Advance equal to the sum of $2,034,500.00 to be used for payment of Capital Improvements . . . Borrower may request an advance (as that term is hereinafter defined) to pay for the costs of capital improvements and renovations to the Property ("Capital Improvements") pursuant to plans and specifications delivered to and approved by the Lender in accordance with this Exhibit B (the "Plans and Specs") and in accordance with a budget for each Capital Improvement undertaken by the Borrower, which shall be subject to Lender's prior approval (the "Budget"). The budget shall include line items (collectively, "Budget Line Items") for the cost of all labor, materials, and equipment to be used in constructing and completing the Capital Improvements (the costs of Capital Improvements and Leasing costs (to the extent such costs are permitted in this Exhibit B) are collectively referred to as "Approved Costs").

On August 26, 2013, CIBC approved both Leases, including the attached plans and specifications for the capital

4

improvements.  However, CIBC did not approve the disbursement of the subsequent advance until Grande Village paid off the Grande Village Loan in full or sold Grande Village Center to a third party purchaser.

On January 21, 2014, CIBC finally approved Grande Village's Budget and removed the condition requiring Grande Village to sell the Grande Village Center.  However, Grande Village was not able to complete the tenant improvements by the March deadline required under the Leases.  Plaintiffs state that the lessees no longer intend to lease space with Grande Village Center.

On March 3, 2014, CIBC issued three letters declaring Grande Village, Grande Properties and Willingboro Urban Renewal in default based upon their alleged failure to deliver certain documents to the bank (e.g., certain ECF statements, operating statements, rent roll, and a certified financial statement for William Juliano for year ending 2012).  Plaintiffs maintain that CIBC's declarations of "technical" default were in error because, as of March 3, 2014, plaintiffs had provided the information requested by CIBC and were not in default, and had not missed any payments.

On April 9, 2014, the borrowers each delivered notices to CIBC in accordance with the Grande Village, Grande Properties, and Willingboro Urban Renewal Loan Documents and the Loan

Modification Agreement, extending the maturity date of each loan from May 10, 2014 to May 10, 2015.  On April 17, 2014, CIBC responded declaring that the borrowers were in default as a result of failing to cure their technical defaults, and further declaring each of the borrowers in default as a result of the failure by William and Thomas Juliano to maintain a minimum net worth of $15,000,000 in accordance with the performance and completion guarantees under the Loans.

Plaintiffs maintain they did not default under the loans. They state they timely provided the information required by CIBC's letter dated March 3, 2014, and that the net worth requirement under the performance and completion guarantees, which required the guarantor to maintain a minimum net worth of $15,000,000, was satisfied since the guaranties collectively defined the guarantor as either William or Thomas Juliano.  On December 6, 2012, Thomas Juliano delivered to CIBC a financial statement demonstrating his net worth in excess of $15,000,000, in satisfaction of the net worth requirement.

On April 28, 2014, plaintiff filed a complaint in state court and on June 2, 2014, defendants removed the matter to federal court.

6

## II.   <u>JURISDICTION</u>

This case was removed to federal court on grounds of diversity.  Plaintiffs Grande Village LLC, Grande Properties, LLC, Willingboro Town Center Urban Renewal North, LLC, and Willingboro Town Center North Manager, LLC are limited liability companies organized and existing under the laws of the State of New Jersey.  The sole members of each of the LLCs are plaintiff William T. Juliano, who is a citizen of the State of Florida, and plaintiff Thomas E. Juliano, who is a citizen of the State of New Jersey.  Defendant CIBC is a corporation organized and existing under the laws of Delaware, and has its principal place of business in New York, New York.  Defendant Canadian Imperial Bank of Commerce is a branch office of Canadian Imperial Bank of Commerce, a banking corporation organized under the laws of Canada with its principal place of business in Toronto, Ontario, Canada.

There is complete diversity between the plaintiffs and defendants and, therefore, this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## III. <u>STANDARD FOR MOTION TO DISMISS</u>

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted

7

pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'"  Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in

8

Twombly expounded the pleading standard for 'all civil actions'
. . . .”); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.
2009) (“Iqbal . . . provides the final nail-in-the-coffin for
the 'no set of facts' standard that applied to federal
complaints before Twombly.

Following the Twombly/Iqbal standard, the Third Circuit has
outlined a three-part analysis in reviewing a complaint under
Rule 12(b)(6).  First, the Court must take note of the elements
needed for plaintiff to state a claim.  Santiago v. Warminster
Tp., 629 F.3d 121, 130 (3d Cir. 2010).  Second, the factual and
legal elements of a claim should be separated; a district court
must accept all of the complaint's well-pleaded facts as true,
but may disregard any legal conclusions.  Id.; Fowler, 578 F.3d
at 210 (citing Iqbal, 129 S. Ct. at 1950).  Third, a district
court must then determine whether the facts alleged in the
complaint are sufficient to show that the plaintiff has a
plausible claim for relief.  Id.  A complaint must do more than
allege the plaintiff's entitlement to relief.  Fowler, 578 F.3d
at 210; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224,
234 (3d Cir. 2008) (stating that the “Supreme Court’s Twombly
formulation of the pleading standard can be summed up thus:
'stating . . . a claim requires a complaint with enough factual
matter (taken as true) to suggest’ the required element.  This

9

'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**IV.**   **DISCUSSION**

Defendants move for dismissal on grounds that: (1) plaintiffs fail to state a claim for breach of contract; (2) plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of the breach of contract claim; (3) plaintiffs fail to state a claim for tortious interference with contract; and (4) the Court should not entertain plaintiffs' claim for declaratory relief.

**A. Breach of Contract**

"To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc., 737 F.3d 879, 900 (3d Cir. 2013)(citing Coyle v. Englander's, 488 A.2d 1083, 1088 (N.J.Super.A.D. 1985)).  "The Supreme Court of New Jersey has instructed that '[w]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and we must enforce those terms as written.'" Id. (citing Kutzin v. Pirnie, 591 A.2d 932, 936 (N.J. 1991)).  A plaintiff must identify the specific contract or provision that

was allegedly breached.  See Skypala v. Mortgage Electronic Registration Systems, Inc., 655 F.Supp.2d 451, 459 (D.N.J. 2009) (dismissing breach of contract claim because complaint did not identify provisions plaintiff asserted were breached).

Defendants argue that plaintiffs' breach of contract claim should be dismissed because: (1) plaintiffs failed to identify the specific contractual provision that they allegedly breached when they declared the borrowers in technical default; and (2) conditioning the disbursement of subsequent funds on the sale of the Grande Village Center was not a breach of the Grande Village Mortgage, but rather their contractual right to exercise their discretion.

To the extent that plaintiffs allege that defendants breached the loan documents when they declared plaintiffs in technical default, plaintiffs' claim fails.  Plaintiffs have not identified what contract, or contractual provision, defendants allegedly breached.  See, Wingate Inns Intern., Inc. v. Cypress Centre Hotels, LLC, No. 11-6287, 2012 WL 6625753, at *9 (D.N.J. Dec. 19, 2012) (determining that the Court cannot draw a reasonable inference of liability for breach of contract without identification of the specific agreement and related provision relied upon); Eprotec Preservation, Inc. v. Engineered Materials, Inc., No. 10-5097, 2011 WL 867542, at *8 (D.N.J. Mar.

12

9, 2011) ("Under New Jersey law, a complaint alleging breach of contract must, at a minimum, identify the contracts and provisions breached"[;] "Failure to allege the specific provisions of contracts breached is grounds for dismissal."). If defendants breached the loan documents by improperly declaring a default, then plaintiffs must identify which contract provision was breached.  Plaintiffs have not done so. They have only alleged generally that defendants breached the loan documents.  Plaintiffs cannot rest on allegations that defendants wrongfully or unreasonably engaged in certain behavior or generally contravened loan documents.  Plaintiffs have access to all the relevant loan documents and should be able to identify the specific contract or provision breached. Although an improper declaration of default may excuse plaintiffs' contractual obligations, or may invoke New Jersey's implied covenant of good faith and fair dealing, it does not amount to a breach of contract unless plaintiffs can identify what contractual provision was breached.

However, in contrast plaintiffs have identified the specific provision allegedly breached in support of their claim that defendants imposed a new condition not required under the loan documents.  Plaintiffs argue that defendants failed to comply with paragraph 2, of Exhibit B to the Grande Village

13

Mortgage, titled "Future Advances."  The provision, quoted by
plaintiffs in their complaint, states that the subsequent
advance was to be used for capital improvements, and that the
borrowers could request an advance for renovations pursuant to
"plans and specifications" approved by the lender, in accordance
with a budget subject to lender's approval.  Plaintiffs allege
that CIBC approved the leases and the plans and specifications
attached thereto.  Plaintiffs allege that they satisfied all
pre-leasing conditions.  They have alleged that they were not in
default.

        Plaintiffs have further alleged that CIBC would not approve
a budget until certain conditions were met, including a newly
added requirement that plaintiffs sell the Grande Village
Center, which if sold at that time would have been at a loss.
Plaintiffs state that although CIBC finally approved the budget
in January 2014, and did so without the requirement that they
sell Grande Village Center, it was too late to make the
necessary improvements by March 2014 as required under the
leases.  Plaintiffs argue that defendants' unreasonable delay to
approve the budget and imposition of the new requirement to sell
the property (later withdrawn) was a breach of paragraph 2,
Exhibit B to the Grande Village Mortgage.  They also argue that
it was a breach of contract for defendants not to reimburse

                                    14

plaintiffs for the costs Grande Village incurred for tenant improvements.

Defendants argue that adding the requirement of the sale of the Grande Village Center was an exercise of their discretion permitted by the mortgage document.  They argue that plaintiffs' description of the requirement as a "monumental condition" was a distortion of the negotiations between CIBC and Grande Village, and that the additional requirement reflects nothing more than prudent and customary loan administration.

At this stage, plaintiffs need only put forth a plausible claim for relief.  They have provided sufficient facts that could support a claim that the requirement to sell the property was not an exercise in discretion but imposition of an additional requirement not permitted under the mortgage.  They are entitled to pursue discovery on this issue and gather facts in support of their claim.

In sum, plaintiffs have not met the elements of their breach of contract claim with regard to defendants' alleged breach by declaring them in technical default.  However, plaintiffs have met the elements of their breach of contract claim with regard to defendants' alleged breach of Exhibit B to the Grande Village Mortgage.  They have identified the specific provision allegedly breached and alleged enough facts to put

15

defendants on notice of the claim.

**B. Implied Covenant of Good Faith and Fair Dealing**

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing[, t]hat is, neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Wood v. New Jersey Mfrs. Ins. Co., 21 A.3d 1131 (N.J. 2011) (citations omitted). "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1126 (N.J. 2001). However, "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive." Id.

Defendants argue that plaintiffs' claim should be dismissed because it is duplicative of their breach of contract claim. Although a claim for breach of the implied covenant of good faith and fair dealing can be dismissed if the conduct at issue is governed by the terms of an express contact, see Hahn v. OnBoard LLC, No. 09-3639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009), that is not the case here. Plaintiffs' claim for

16

breach of the implied covenant of good faith and fair dealing is
not governed by the terms of the contract.  As noted supra,
plaintiffs have not alleged sufficient facts in support of the
elements of their breach of contract claim with regard to
defendants declaring them in technical default.  They have,
however, alleged sufficient facts to pursue a claim for breach
of the implied covenant of good faith and fair dealing on
grounds that defendants wrongfully declared them to be in
default.  Plaintiffs have pleaded that defendants' letter
declaring them in default was in error because they satisfied
all requests for information and had not missed a payment.

Plaintiffs have also pleaded, alternatively, that if
defendants exercised their discretion to require the sale of the
property before releasing the subsequent advance funds, then
such exercise of discretion was in breach of the covenant of
good faith and fair dealing.  This is not a duplicative claim.
The breach of contract claim alleged that defendants' actions
were not an exercise in discretion but an added requirement not
permitted under the mortgage.  In contrast, the claim for breach
of the implied covenant of good faith and fair dealing concedes
that defendants exercised their discretion but argues they did
so in bad faith.  Plaintiffs have alleged that defendants
unreasonably refused to distribute the subsequent advance

because they wanted plaintiffs to sell the Grande Village Center.

Although defendants offer explanations for their decisions during the budget review process, the purpose of a motion to dismiss is not for the Court to weigh evidence but for the Court to determine whether the plaintiff has pleaded enough facts to suggest each element of their claim and whether they are entitled to pursue evidence in support of their claim. Further, the facts are viewed in the light most favorable to the plaintiff, not the defendant.

Accordingly, defendants' motion to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing will be denied.

## C. Tortious Interference with Contract

Under New Jersey law, "the general rule defining the elements of tortious interference with an existing contract is: One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the

18

contract." <u>Nostrame v. Santiago</u>, 61 A.3d 893, 901 (N.J. 2013)

(citing Restatement (Second) of Torts § 766); <u>see also</u>, <u>Gaelick</u>

<u>v. Connecticut General Life Ins. Co.</u>, No. 11-2464, 2011 WL

3794228, at *4 (D.N.J. 2011).[1]

    Plaintiffs have pleaded sufficient facts in support of

their claim for tortious interference.  They pleaded that they

had leases with two prospective tenants, and that defendants

acted with malice[2] by intentionally refusing to distribute the

subsequent advances without justification, even though they knew

that Grande Village risked losing the tenants as a result of the

delay.  Plaintiffs pleaded that the time to renovate the space,

per the lease terms, had passed and plaintiffs had not heard

from, and did not expect to hear from, the former lessees

---

[1]  Although sometimes conflated, New Jersey law recognizes a
claim for tortious interference with prospective contractual or
economic relationship, as distinct from the tort of interference
with a contract, although the elements to prove both are
substantially similar.  <u>See</u> <u>Nostrame v. Santiago</u>, 61 A.3d 893,
900-01 (N.J. 2013); <u>Printing Mart-Morristown v. Sharp</u>
<u>Electronics Corp.</u>, 116 N.J. 739, 563 A.2d 31 (N.J. 1989).  The
parties do not dispute that valid leases existed and plaintiffs
state in their complaint that they are bringing a tortious
interference with contract claim.  Therefore, the Court will use
the standard for a tortious interference with contract claim.

[2]  Although the word "malice" is not used in the standard recently
articulated by the New Jersey Supreme Court ("improperly" is
used instead), it is used in the case law and both parties
present arguments based on malice.  Therefore, the Court will
address it as such but as explained <u>infra</u>, interprets the term
malice as more akin to "improper" than "malicious."

thereby indicating lost rental income as a result.

Defendants deny that they acted with malice and argue that it would go against common sense for them to want to sabotage plaintiffs' business after loaning them money, and the more plausible explanation is that they engaged in prudent loan practices.  The term "malice" as used in a tortious interference claim under New Jersey law "is not used in the literal sense requiring ill will toward the plaintiff, but instead malice is defined to mean that the harm was inflicted intentionally and without justification or excuse."  Port-O-San Corp. v. Teamsters Local Union No. 863 Welfare & Pension Funds, 833 A.2d 633, 637-38 (N.J.Super.A.D. 2003).

Plaintiffs have pleaded sufficient facts in support of their claim that defendants acted with malice.  They alleged that several letters were sent to defendants describing the consequences of not being able to comply with the leases, including loss of income, thereby satisfying the intentional element.  They have also alleged facts that the condition to sell the property was imposed and then later retracted after it was too late to perform the tenant improvements by the deadlines specified in the leases thereby satisfying the "without justification" element.

Accordingly, plaintiffs have pleaded sufficient facts to

20

suggest a claim for tortious interference with contract and defendants' motion to dismiss this claim will be denied.[3]

### D. Declaratory Relief

"The purpose of a declaratory judgment is 'to end uncertainty about the legal rights and duties of the parties to litigation ....'" Mercedes-Benz USA, LLC v. ATX Group, Inc., No. 08-3529, 2010 WL 3283544, at *9 (D.N.J. August 18, 2010) (citing N.J. Ass'n for Retarded Citizens, Inc. v. N.J. Dep't of Human Serv., 445 A.2d 704 (N.J. 1982)). Although the New Jersey Declaratory Judgment Act requires that it be "liberally construed and administered[,] ... the court has discretion to

---

[3] Defendants also argue that plaintiffs' claim for tortious interference with contract should be dismissed because it relies on the same allegations as their breach of contract claims and because plaintiffs fail to allege any independent duty. This is incorrect. Although a "plaintiff cannot convert basic contract claims into negligence claims," Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 281 (N.J. 2002), the claim for tortious interference with contract is an intentional tort, not a negligence claim. See G & F Graphic Services, Inc. v. Graphic Innovators, Inc., 18 F.Supp.3d 583, 588 (D.N.J. 2014) (rejecting argument that plaintiff needs to establish duty of care when alleging an intentional tort). It is a duty extrinsic to the contract and every person is under a duty not to commit an intentional tort. Id.; Emerson Radio Corp. v. Orion Sales, Inc., No. 95-6455, 2000 WL 49361, at *7-8 (D.N.J. Jan. 10, 2000) ("A tort claim may be asserted alongside a breach of contract claim[;] "The critical issue is whether the allegedly tortious conduct is extraneous to the contract."). Here, plaintiffs are alleging that defendants intentionally interfered with their lease contracts with third-parties which are separate from the loan documents.

grant or deny a request for declaratory relief 'when to do so would be just and fair.'"  Id. (citing N.J. Stat. Ann. 2A:16-51).  "A declaratory judgment action should lie 'only in cases where it could be of some practical convenience to the parties.'"  Id. (citing Larson v. Gen. Motors Corp., 134 F.2d 450, 453 (2d Cir. 1943); Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)).

Defendants argue that plaintiffs' claims for declaratory relief should be dismissed because they are duplicative of their breach of contract claims.  Plaintiffs respond that declaratory judgment is proper to set forth the rights and obligations of each party with respect to the loan documents.

There is some overlap between plaintiffs' request for a declaratory judgment as to whether defendants breached the loan documents and their breach of contract claims.  However, there may be specific controversies with regard to what payments may be due, and the like, that may not be resolved after decision is made on the claims.

Therefore, defendants' motion to dismiss plaintiffs' request for declaratory relief will be denied without prejudice. If, after litigation of plaintiffs' contract claims, there are no outstanding issues that must be resolved by the Court,

Defendants may renew their motion to dismiss plaintiffs'
requests for declaratory relief.

### V.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss
shall be granted in part and denied in part.  Defendants' motion
to dismiss plaintiffs' claim for breach of contract with regard
to defendants' alleged breach by declaring them in default will
be granted.  Defendants' motion to dismiss plaintiffs' claim for
breach of contract with regard to defendants' alleged breach of
Exhibit B to the Grande Village Mortgage will be denied.
Defendants' motion to dismiss plaintiffs' claims for breach of
the implied covenant of good faith and fair dealing, and for
tortious interference with contract will be denied.  Defendants'
motion to dismiss plaintiffs' request for declaratory relief
will be denied without prejudice.


                              s/Noel L. Hillman
                         NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Date:      March 6, 2015


23