Adam K. Derman, Esq.
David M. Dugan, Esq.
CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, NJ 07052
Telephone: (973) 325-1500
Facsimile: (973) 325-1501

*Attorneys for CIBC INC. and Canadian
Imperial Bank of Commerce, New York
Agency*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GRANDE VILLAGE LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CIBC INC., et al., <br><br> Defendants <br><br><br> CIBC INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> GRANDE VILLAGE LLC, et al., <br><br> Defendants. | ECF Case <br><br> CIVIL ACTION NO.: 14-CV-03495-NLH-JS |

## BRIEF IN SUPPORT OF CIBC'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF THE JULIANO PARTIES' EXPERT, ALAN S. FELLHEIMER, ESQ.

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

LEGAL STANDARD ............................................................................................ 4

ARGUMENT ......................................................................................................... 5

POINT I.  MR. FELLHEIMER'S PROPOSED TESTIMONY EXCEEDS THE SCOPE
OF PROPER EXPERT TESTIMONY .......................................................... 5

    A.    Legal Conclusions ........................................................................... 5

    B.    Ultimate Legal Issues ..................................................................... 8

    C.    Intent, Motive, and State of Mind .................................................. 9

POINT II.  MR. FELLHEIMER'S OPINIONS ARE UNRELIABLE ...................... 11

    A.    Mr. Fellheimer's Opinions are Based on an Incomplete Record ........................ 11

    B.    Mr. Fellheimer Constructs a Factual Narrative Based on Severe
Mischaracterizations of the Evidence ................................................ 13

        1.    CIBC's write-off of deferred interest was not the "sole reason" for
the transfer of the Loans to the Special Loans Group ............................. 15

        2.    The transfer of the Loans to the Special Loans Group did not signal
the "death knell" for the Loans ................................................ 17

        3.    CIBC did not prematurely determine that it would not release
Subsequent Advance funds .................................................... 18

        4.    Exhibit B to the Grande Village Mortgage, in its entirety, governs
the conditions precedent for a Subsequent Advance ............................. 19

    C.    Mr. Fellheimer's Personal Experience Is Insufficient to Form Reliable
Opinions and His Opinions Collapse into Ipse Dixit ........................... 20

    D.    Taken Together, Mr. Fellheimer's Factual Narrative and Opinions Amount
to No More than the Arguments of Counsel ....................................... 22

POINT III.  MR. FELLHEIMER IS NOT QUALIFIED TO OFFER HIS OPINIONS .............. 23

POINT IV.  MR. FELLHEIMER'S OPINIONS DO NOT FIT THE DISPUTED ISSUES ....... 24

CONCLUSION ...................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
   627 F. Supp. 2d 384 (D.N.J. 2009) ...................................................................................9

*Casper v. SMG*,
   389 F. Supp. 2d 618 (D.N.J. 2005) ...............................................................................5, 7

*Connolly v. ReliaStar Life Ins. Co.*,
   Civ. Act. No. 03-5444, 2006 WL 3355184 (E.D. Pa. Nov. 13, 2006)..................................8

*Crowley v. Chait*,
   322 F. Supp. 2d 530 (D.N.J. 2004) .............................................................................11, 12

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993).................................................................................................1, 4, 24

*Discover Bank v. Shea*,
   362 N.J. Super. 200 (N.J. Super. 2001) .............................................................................6

*E.E.O.C. v. Bloomberg L.P.*,
   No. 07 Civ. 8383, 2010 WL 3466370 (S.D.N.Y. Aug.31, 2010) ...........................................11

*Schneider ex rel. Estate of Schneider v. Fried*,
   320 F.3d 396 (3d Cir. 2003).........................................................................................4, 11

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997).......................................................................................................21

*Highland Capital Mgmt., L.P. v. Schneider*,
   551 F. Supp. 2d 173 (S.D.N.Y. 2008)..................................................................8, 9, 13, 14

*Holman Enters. v. Fid. & Guar. Ins. Co.*,
   563 F. Supp. 2d 467 (D.N.J. 2008) ....................................................................................5

*Krys v. Aaron*,
   112 F. Supp. 3d 181 (D.N.J. 2015) .......................................................................7, 9, 11, 13

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (S.D. Ala. 1999).........................................................................................20

*Magnet Resources, Inc. v. Summit MRI, Inc.*,
   318 N.J. Super. 275, 723 A.2d 976 (App. Div. 1998) ...........................................................7

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
    643 F. Supp. 2d 482 (S.D.N.Y. 2009)...................................................................8

*Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*,
    No. 00 Civ. 3235, 2003 WL 21108232 (S.D.N.Y. May 14, 2003).........................21

*Montgomery Cty. v. Microvote Corp.*,
    320 F.3d 440 (3d Cir. 2003)...................................................................................11

*Orthoflex, Inc. v. ThermoTek, Inc.*,
    986 F. Supp. 2d 776 (N.D. Tex. 2013) ..................................................................22

*United States, ex rel. Palmer v. C & D Techs., Inc.*,
    Civ. Act. No. 12-907, 2015 WL 4470291 (E.D. Pa. July 22, 2015).......................19

*Perez v. First Bankers Tr. Servs., Inc.*,
    Civ. Act. No. 12-4450, 2015 WL 5722843 (D.N.J. Sept. 29, 2015) .......................8

*In re Rezulin Prod. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)..............................................................14, 15

*Roberson v. City of Philadelphia*,
    Civ. Act. No. 99-3574, 2001 WL 210294 (E.D. Pa. Mar. 1, 2001).........................9

*Robinson v. Hartzell Propeller, Inc.*,
    326 F. Supp. 2d 631 (E.D. Pa. 2004) .....................................................................9

*Sparton Corp. v. United States*,
    77 Fed. Cl. 1 (2007) ..............................................................................................19

*Suter v. Gen. Accident Ins. Co. of Am.*,
    424 F. Supp. 2d 781 (D.N.J. 2006) .......................................................................24

*United States v. Williams*,
    506 F.3d 151 (2d Cir. 2007)....................................................................................4

*Warren Distrib. Co. v. InBev USA L.L.C.*,
    Civ. Act. No. 07-1053, 2010 WL 2179167 (D.N.J. May 28, 2010) .........................9

*Wehman v. State Farm Fire & Cas. Co.*,
    Civ. Act. No. 14-1416, 2015 WL 5167184 (D.N.J. Sept. 3, 2015) ...................4, 20

## Other Authorities

FED. R. EVID. 702............................................................................................... *passim*

FELLHEIMER & EICHEN LLP, https://www.fellheimereichen.com/attorney/alan-
    fellheimer/ (last visited May 9, 2018)....................................................................23

CIBC INC. and Canadian Imperial Bank of Commerce, New York Agency (together, "CIBC")[1] respectfully submit this Brief in Support of CIBC's Motion to Exclude Expert Testimony of Alan S. Fellheimer, Esq., pursuant to Federal Rule of Evidence 702, and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

## PRELIMINARY STATEMENT

On January 29, 2016, the Juliano Parties served the Expert Report of Alan S. Fellheimer, Esq., containing Mr. Fellheimer's purported expert opinions and conclusions concerning a host of issues in these Actions.  On March 21, 2016, the Juliano Parties served the Expert Rebuttal Report of Alan S. Fellheimer, Esq., which responds to the opinions and analysis contained in the Expert Report of Nancy Terrill, which CIBC served on January 29, 2016.[2]  Mr. Fellheimer's reports do little more than advance the Juliano Parties' factual narrative and draw the factual and legal conclusions that the Juliano Parties wish the Court to make, usurping its role both as trier of fact and as instructor of the law.  Essentially, Mr. Fellheimer, a longtime commercial litigator, seeks to deliver a closing argument, casting the Juliano Parties' trial arguments in the guise of

---

[1] Unless otherwise indicated herein, capitalized terms shall have the meanings ascribed to them in CIBC's May 2, 2016 Motion for Summary Judgment.  While CIBC makes no independent assertion of confidentiality concerning any portion of the papers supporting this motion, CIBC is filing certain documents attached to the accompanying Declaration of James C. duPont under seal and is redacting the publicly filed versions of certain documents pursuant to the Juliano Parties' confidentiality designations and the position they took by way of their prior motion to seal.  In its December 19, 2016 Order, this Court found that all of the documents and excerpts submitted herewith under seal or in redacted form were entitled to such protection, and thus the sealing/redactions herewith are pursuant to that Order.

[2] A copy of the Expert Report of Mr. Alan S. Fellheimer, Esq. is attached as Exhibit 1 to the Declaration of James C. duPont, dated May 21, 2018.  Citations to the report shall take the form, "Rpt. at __."  A copy of the Expert Rebuttal Report of Mr. Alan S. Fellheimer, Esq. is attached as Exhibit 2 to the Declaration of James C. duPont, dated May 21, 2018.  Citations to the rebuttal report shall take the form, "Rebuttal Rpt. at __."  A copy of excerpts of the transcript of Mr. Fellheimer's April 8, 2016 deposition is attached as Exhibit 3 to the Declaration of James C. duPont, dated May 21, 2018.  Citations to the transcript shall take the form, "Dep. at __."

expert opinion.  As set forth in more detail below, the Court should exclude all purported expert opinions proffered by Mr. Fellheimer for at least the following reasons.

*First*, Mr. Fellheimer's proposed testimony exceeds the permissible scope of expert testimony in several ways.  Mr. Fellheimer reaches numerous legal conclusions concerning, among other things: (i) CIBC's alleged "breaches" of the Loan Agreements;[3] (ii) the Juliano Parties' compliance with the Loan Agreements; (iii) the characterization of the parties' behavior vis-à-vis the Loan Agreements as either proper or improper; (iv) whether the Loan Agreements were modified; (v) whether the Juliano Parties' performance under the Loan Agreements was excused; and (vi) whether certain categories of damages are recoverable by the Juliano Parties. Mr. Fellheimer even goes so far as to offer the Court an opinion concerning an ultimate issue in the case: whether CIBC breached the implied covenant of good faith and fair dealing.  Mr. Fellheimer also seeks to divine the intent and state of mind of CIBC by opining that CIBC had a singular objective with respect to the Loans and that, although CIBC approved a Budget for tenant improvements at Grande Village, CIBC never actually "intended" to fund such tenant improvements.

*Second*, Mr. Fellheimer's opinions are unreliable.  While an expert's opinions must be based upon reliable information and "good grounds," Mr. Fellheimer's opinions are based upon a staggeringly incomplete record.  Mr. Fellheimer reviewed the transcripts of only 7 of the 14 depositions taken in these Actions (excluding certain key personnel such as Delco's controllers and leasing manager), reviewed only 32 of nearly 400 deposition exhibits, and reviewed only 13 additional documents out of the more than 600,000 pages produced by CIBC.  Furthermore,

---

[3] Although the Court dismissed the Juliano Parties' breach of contract claims in the 14-cv-3495 Action in its March 30, 2018 Opinion on CIBC's Motion for Summary Judgment, CIBC addresses these legal conclusions here because Mr. Fellheimer frequently opines that certain behavior by CIBC *both* violated the Loan Agreements *and* contravened sound banking practices.

these documents were selected for Mr. Fellheimer by the Juliano Parties' counsel and Mr. Fellheimer was not given access to all documents produced in the Actions.   When Mr. Fellheimer asked to see certain documents related to the Loans' internal risk rating history and any provisions CIBC had taken on the Loans, Mr. Fellheimer was advised by counsel that CIBC had produced no such documents.  It had.  It is no surprise that Mr. Fellheimer uses what little record evidence he did review to construct a factual narrative that is based upon severe mischaracterizations of the record.  Mr. Fellheimer offers little in the way of analysis or support for his conclusions; he simply asks this Court to take his word for it because of his experience as a commercial litigator.

*Third*, Mr. Fellheimer is not qualified to offer his opinions as an expert.  Mr. Fellheimer has spent the majority of his career as a commercial litigator.  What banking experience Mr. Fellheimer does possess, is that of a banking executive.   Mr. Fellheimer has no first-hand experience or formal training as a workout officer or in construction financing.  In sum, Mr. Fellheimer's experience concerning the matters at issue in these Actions comes as a litigator representing clients in such matters.  It is no wonder that Mr. Fellheimer's reports offer an advocate's view of the facts and the legal conclusions to be drawn therefrom.

*Fourth*, Mr. Fellheimer's opinions do not fit the disputed issues in these Actions.  Mr. Fellheimer offers the opinion that CIBC's accounting treatment of deferred interest following the 2011 Loan Modification was improper, that the 2011 Loan Modification should have been recognized immediately as a TDR in 2011, and that CIBC's allegedly "improper" accounting treatment resulted in the transfer of the Loans to the Special Loans Group.  Mr. Fellheimer does not, and can not, argue that the Juliano Parties were entitled to any particular accounting treatment for the Loans on CIBC's books or that they were entitled to have the Loans

administered by any specific business unit within CIBC.  That CIBC's accounting treatment for deferred interest was revised and that the Loans were eventually transferred to the Special Loans Group is simply not disputed and does nothing to assist the trier of fact.

As demonstrated below, Mr. Fellheimer's reports are so replete with impermissible and unreliable opinions that if the Court strips away what is improper, it is left with nothing.  It is not this Court's obligation to salvage what little, if anything, may be permissible expert testimony.

## LEGAL STANDARD

The proponent of proffered expert testimony must establish its admissibility by a preponderance of the evidence.  *Daubert*, 509 U.S. at 592 & n.10.  In order to determine whether a party has met its burden to establish admissibility, a court should consider whether: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  FED. R. EVID. 702; *see also Daubert*, 509 U.S. at 589–92; *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).  "The United States Court of Appeals for the Third Circuit has explained that Rule 702 sets forth three separate restrictions on the admission of expert testimony: qualification, reliability, and fit."  *Wehman v. State Farm Fire & Cas. Co.*, Civ. Act. No. 14-1416, 2015 WL 5167184, at *3 (D.N.J. Sept. 3, 2015) (citing *Schneider ex rel. Estate of Schneider v. Fried,* 320 F.3d 396, 404 (3d Cir. 2003)).

## ARGUMENT

## POINT I

## MR. FELLHEIMER'S PROPOSED TESTIMONY EXCEEDS
## THE SCOPE OF PROPER EXPERT TESTIMONY

Rule 702 requires that expert testimony must concern "scientific, technical, or other specialized knowledge."  FED. R. EVID. 702.  Mr. Fellheimer's proposed testimony runs far afield of this requirement and in so doing violates prohibitions against experts opining on legal conclusions, ultimate legal issues, intent or other states of mind, and the expert's understanding of how the facts of a case fit together.

### A.     Legal Conclusions

"[The] prohibition on experts testifying as to their own legal conclusions is so well established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.  In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *Holman Enters. v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 (D.N.J. 2008) (internal citations and quotations omitted).  Consequently, courts view expert testimony from lawyers (like Mr. Fellheimer) with a certain, well-deserved skepticism. *See Casper v. SMG*, 389 F. Supp. 2d 618, 620 (D.N.J. 2005) (excluding testimony of expert "most accurately characterized as a lawyer who also holds a doctorate in economics rather than an economist who also holds a law degree").

Mr. Fellheimer's report is littered with legal conclusions, including, but not limited to, frequent references to CIBC's violations of the Loan Agreements and the Juliano Parties' supposed compliance with those agreements.  Specifically, Mr. Fellheimer opines:

- ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████ Rpt. at 19 (emphasis added).

5



- ███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████ Rpt. at 23–24 (emphasis added).

- ███████████████████████████████████████████
████████████████ Rpt. at 25 (emphasis added).

- ███████████████████████████████████████████
███████████████████████████████████████████ Rpt. at 26 (emphasis added).

- ███████████████████████████████████████████
███████████████████████████████████████████
Rpt. at 27 (emphasis added).

Mr. Fellheimer further opines that CIBC and the Juliano Parties either did, or did not, comport themselves in accordance with the terms of the Loan Agreements:

- ███████████████████████████████████████████
███████████ Rpt. at 19 (emphasis added).

- ███████████████████████████████████████████
████████████████████████ Rpt. at 28 (emphasis added).

- ███████████████████████████████████████████
███████████████████████████████████████ Rpt. at 28 (emphasis added).

- ██████████████████████████████████████ Rpt. at 29 (emphasis added).

Mr. Fellheimer reaches other legal conclusions related to, among other things, whether the Loan Agreements were modified, whether the Juliano Parties' performance under the Loan Agreements was excused, and whether certain categories of damages are recoverable:

- ███████████████████████████████████████████
███████████████████████████████████████████
███████████████ Rpt. at 28 (emphasis added).

6



Rpt. at 28–29 (emphasis added).

Rpt. at 31 (emphasis added).

Mr. Fellheimer's opinions concerning any alleged breaches of the applicable Loan Agreements, and the parties' behavior vis-à-vis those agreements, must be excluded. *See Krys v. Aaron*, 112 F. Supp. 3d 181, 204 (D.N.J. 2015) (excluding expert testimony "that Defendants' conduct breached certain legal or contractual duties, because this testimony . . . constitutes an inadmissible legal opinion") (internal citations omitted).  Similarly, Mr. Fellheimer's opinions that rely upon citations to case law, Rpt. at 25, 28, 32, must also be excluded, *see Casper*, 389 F. Supp. 2d at 621–22 (excluding testimony which "relies on case law and statutes, applying them to the contemporaneous documentary record and oral testimony in th[e] case, to answer legal questions.") (internal quotation marks excluded).[4]

It should come as no surprise that Mr. Fellheimer's reports principally seek to draw legal conclusions from the Juliano Parties' factual narrative given that Mr. Fellheimer has spent the bulk of his professional career as a practicing attorney and chiefly derives his knowledge of workout negotiations and construction lending from his litigation experience. *See infra* Point III.

---

[4] Moreover, in offering his legal interpretations, Mr. Fellheimer mischaracterizes the law and/or is unsure as to which jurisdiction's law applies.  Dep. at 268:20–269:15 ("Q. No.  What's the basis for your belief that the Juliano Parties don't have a duty to mitigate damages here?  A. Pennsylvania law has, you know, some provisions with respect to mitigation have been severely weakened in Pennsylvania in situations where you have a defalcation such as the banks here.  Q. Does Pennsylvania law apply under the loan documents here?  A. I can't remember Pennsylvania – New Jersey law.  Excuse me; New Jersey law.  Forgive me.  Forgive me.").

B.      **Ultimate Legal Issues**

Just as Mr. Fellheimer reaches improper legal conclusions, he seeks to opine on ultimate legal issues properly within the province of the Court.  The Court "must vigilantly guard against any attempt by an expert to opine on the ultimate *legal* issues in [a] case."  *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 504 (S.D.N.Y. 2009) (emphasis in original).  "Even if his testimony is couched in terms of industry practices, the expert still may not, under any circumstances, opine on the ultimate legal issue in the case."  *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 181 (S.D.N.Y. 2008).  Such material is more properly the subject of briefing and legal argument by the parties' counsel.  *See Perez v. First Bankers Tr. Servs., Inc.*, Civ. Act. No. 12-4450, 2015 WL 5722843, at *3-4 (D.N.J. Sept. 29, 2015) ("The Court will decide the ultimate legal issues in this case and any legal opinion FBTS would like to provide the Court should be done through proper briefing, not expert opinion.").

In his report, Mr. Fellheimer goes so far as to conclude that ███████████ in breach of the implied covenant of good faith and fair dealing.  Rpt. at 32.  Here, there is no question that Mr. Fellheimer seeks to cloak his opinion on an ultimate legal issue in the guise of his ███████████ *Id.*  Courts in this Circuit categorically reject expert testimony purporting to determine whether a party has acted in bad faith.  *See Connolly v. ReliaStar Life Ins. Co.*, Civ. Act. No. 03-5444, 2006 WL 3355184, at *13 n.32 (E.D. Pa. Nov. 13, 2006) (noting that it is "well settled" that ultimate conclusions regarding bad faith are not appropriate for expert opinions).[5]

---

[5] Mr. Fellheimer also attempts to usurp the role of the Court by concluding that, because CIBC allegedly imposed upon Grande Village conditions to disbursing a Subsequent Advance that were not found in the Grande Village Mortgage, ███████████ and the Juliano Parties' performance under the Loan Documents was therefore excused.  Rpt. at 25.  The Court has already concluded that CIBC did ***not*** impose any such conditions to a disbursement of Subsequent Advance funds.  *See* Op. at 36, Mar. 30, 2018, ECF No. 149 (14-3495 Action).

### C.     Intent, Motive, and State of Mind

"An expert cannot testify about a person's intent, motive, or state of mind." *Warren Distrib. Co. v. InBev USA L.L.C.*, Civ. Act. No. 07-1053, 2010 WL 2179167, at *6 (D.N.J. May 28, 2010) (quoting *Bracco Diagnostics, Inc. v. Amersham Health, Inc.,* 627 F. Supp. 2d 384, 440–41 (D.N.J. 2009)).  "[T]he question of intent constitutes a 'classic[al] jury question and not one for experts.'"  *Krys*, 112 F. Supp. 3d at 206 (quoting *Robinson v. Hartzell Propeller, Inc.,* 326 F. Supp. 2d 631, 648 (E.D. Pa. 2004)).  Expert testimony concerning a party's state of mind is improper because it necessarily requires inference and speculation.  *See Roberson v. City of Philadelphia*, Civ. Act. No. 99-3574, 2001 WL 210294, at *15 (E.D. Pa. Mar. 1, 2001) (refusing to permit an expert to "speculate as to other parties' states of mind").  Experts cannot, moreover, avoid the prohibitions on testifying about intent or other states of mind by couching such testimony in terms of industry standards and practices.  *See Highland Capital Mgmt.*, 551 F. Supp. 2d at 182–83 ("[An expert]'s belief about a party's state of mind is an improper subject for expert testimony and cannot be saved by couching his opinion as 'industry custom and practice.'").

Mr. Fellheimer repeatedly engages in rank speculation as to CIBC's purported intent and motivation as illustrated by the following non-exhaustive list of conjectural assertions:

- ██████████████████████████████████████████ Rpt. at 10 (emphasis added).

- ████████████████ Rpt. at 13 (emphasis added).

- ███████████████████████████████████████████████ Rpt. at 26 (emphasis added).

- ██████████████████████████████ Rpt. at 30 (emphasis added).

9

-  Rpt. at
30–31 (emphasis added).

-  Rebuttal Rpt. at 7 (emphasis added).

-  Rebuttal Rpt. at 8 (emphasis
added).

At his deposition, Mr. Fellheimer admitted that his opinions regarding CIBC's purported intentions and motivations constitute little more than surmise and guesswork derived from the limited record evidence he bothered to review. *See* Dep. at 135:18–136:11; Dep. at 140:22–142:10 ("Q. Have you seen a single document generated by CIBC that indicates that they had no intention of funding the build out? A. Just the delay of time. All the time it went by all. The constant change. And then after all that time, they said, well, we're going to send it to our construction expert who then testified he never gets asked to do that by the work out department. The behavior the way they acted is what I'm relying on."). Indeed, Mr. Fellheimer concedes the entirely speculative nature of his opinions. *See* Dep. at 294:11–17 ("Q. Is it your opinion that as of December 20, 2013 CIBC was only willing to move forward with a construction budget pursuant to the terms of this term sheet? A. *I can't tell you what they were willing to do or not willing to do* privately. This is the only evidence of their intent.") (emphasis added). The Court should reject Mr. Fellheimer's attempts to present the arguments of counsel and to instruct the Court on what inferences to draw from the evidence as to CIBC's motives and intentions.

## POINT II

## MR. FELLHEIMER'S OPINIONS ARE UNRELIABLE

In addition to exceeding the bounds of proper expert testimony, Mr. Fellheimer's purported opinions are not reliable. "It is axiomatic that the information upon which an expert bases his opinion must be reliable." *Crowley v. Chait*, 322 F. Supp. 2d 530, 546 (D.N.J. 2004) (citations omitted). Thus, Rule 702 requires that expert testimony must be "based on sufficient facts or data," and be "the product of reliable principles and methods," "reliably applied . . . to the facts of the case," FED. R. EVID. 702, even though "the party proffering the expert [is not required] to demonstrate the 'correctness' of their expert's opinions," *Krys*, 112 F. Supp. 3d at 189. In sum, "the expert must have good grounds for his or her belief." *Schneider*, 320 F.3d 396 at 404 (internal citation and quotation marks omitted). Mr. Fellheimer's proposed testimony does not come close to approaching the threshold requirement of demonstrating "good grounds" for his opinions. Accordingly, his testimony should be excluded as unreliable.

### A.      Mr. Fellheimer's Opinions are Based on an Incomplete Record

Mr. Fellheimer's opinions are based upon an incomplete and biased record. *See* Rpt. at Exhibit B. Mr. Fellheimer reviewed only those deposition transcripts and other materials selected for him by the Juliano Parties' counsel. *See* Dep. at 114:19–115:7 (testifying that he was aware that he reviewed a "small group" of the documents produced by CIBC and that those documents were selected for him); Dep. at 39:18–40:4 (testifying that he did not know whether he was provided the transcripts of all of the depositions taken in the Actions); Dep. at 45:7–20 (testifying that he was unaware that Delco's two controllers and leasing manager were deposed); *see also Montgomery Cty. v. Microvote Corp.,* 320 F.3d 440, 448–49 (3d Cir. 2003) (excluding testimony because, *inter alia,* expert based his opinion on a sampling of tapes selected by counsel; *E.E.O.C. v. Bloomberg L.P.*, No. 07 Civ. 8383, 2010 WL 3466370, at *14 (S.D.N.Y.

Aug.31, 2010) ("Relying solely on the information fed to [the expert] by the EEOC without independently verifying whether the information is representative undermines the reliability of [the expert's] analysis."); *Crowley*, 322 F. Supp. 2d at 547 ("By reviewing only those depositions provided to him by Plaintiff's counsel, and by reviewing what appears to be for the most part only preselected excerpts of those depositions, [the expert] relied upon information that is simply too unreliable to be trusted.").

Therefore, each time Mr. Fellheimer asserts that there is "no evidence" or "nothing in the record" to support a particular conclusion, his testimony must be excluded as lacking foundation.



*See* Rpt. at 7 (████████████████████████████████

████████████████████████████████████

████████████████ (emphasis added); Rebuttal Rpt. at 6 n.5 (█████████

████████████████████████████████████

████████████) (emphasis added); Rebuttal Rpt. at 4–5 (████████████████

████████████████████████████████████)

(emphasis added); Rebuttal Rep. at 5 (████████████████████████████

████████) (emphases added).

In fact, Mr. Fellheimer testified that when he asked the Juliano Parties' counsel for copies of internal CIBC credit memoranda reflecting the risk rating histories of the Loans, and whether provisions had been taken against the Loans, counsel inaccurately advised him that CIBC had not produced such documents.[6]  Dep. at 89:11–90:8, 93:4–94:5, 106:10–15.  As discussed in

---

[6] Of note, when Mr. Fellheimer was asked at his deposition whether he was told that documents evidencing CIBC's history of provisioning losses on the Loans had not been produced by CIBC, Mr. Fellheimer was instructed not to answer.  Dep. at 106:16–107:2.  In any event, with respect to CIBC's production of credit memoranda, Mr. Fellheimer's preparation of a rebuttal to Nancy Terrill's report should have caused him to identify and request these documents, as they are all

more detail below, this information serves to discredit a fundamental opinion in Mr. Fellheimer's report: that a change in CIBC's accounting treatment of deferred interest pursuant to the Loan Agreements was the ███████ for the transfer of the Loans to the Special Loans Group.  *See infra* Point II.B.1.

> ### B.   Mr. Fellheimer Constructs a Factual Narrative Based on Severe Mischaracterizations of the Evidence

"[A]n expert cannot be presented to the jury *solely* for the purpose of constructing a factual narrative based on record evidence."  *Krys*, 112 F. Supp. 3d at 206 (emphasis in original) (quoting *Highland Capital Mgmt.*, 379 F. Supp. 2d at 469).  Similarly, "expert testimony is inadmissible when it addresses lay matters which a jury is capable of understanding and deciding without the expert's help."  *Highland Capital Mgmt.*, 379 F. Supp. 2d at 468 (internal citation and quotation marks omitted).  Therefore, expert testimony that consists of factual narrative and addresses matters that the trier of fact is capable of understanding and deciding is inadmissible.

The first *two thirds* of Mr. Fellheimer's report consist solely of his rendition of the facts and his spin on testimonial and documentary evidence about which he has no first-hand familiarity.  Rpt. at 4–20.[7]  Mr. Fellheimer's report offers no description of the nature of his assignment or the specific questions or topics he was engaged to consider.  Mr. Fellheimer merely delivers the Juliano Parties' factual narrative and attempts to cloak the factual and legal conclusions he draws therefrom in the guise of opinions supported by his professional experience.  Such material is not the proper subject of expert testimony, but must instead be presented, if it is admissible at all, "through percipient witnesses and documentary evidence."

_____

identified by Borrower, date of the memo, and production Bates number under the header "CIBC CREDIT MEMOS" in "Appendix B Information Considered," attached to Ms. Terrill's report.

[7] Given the limited number of carefully selected documents provided to Mr. Fellheimer by the Juliano Parties, CIBC objects to his purported "factual" narrative.  CIBC does not accede to any factual characterization in Mr. Fellheimer's report or his rebuttal report.

*Highland Capital Mgmt*, 379 F. Supp. 2d at 469 (quoting *In re Rezulin Prod. Liab. Litig.*, 309 F.

Supp. 2d. 531, 551 (S.D.N.Y. 2004).

Mr. Fellheimer's report is replete with spin, rank speculation, and surmise:



- Rpt. at 11 (emphasis added).

- Rpt. at 13 (emphasis added).

- Rpt. at 23 (emphasis added).

- Rpt. at 24 (emphasis added).

- Rpt. at 24–25 (emphasis added).

- Rpt. at 25 (emphasis added).

- Rpt. at 26 (emphasis added).

- Rpt. at 26 (emphasis added).

- Rpt. at 31 (emphasis added).

- Rebuttal Rpt. at 3–4 (emphasis added).

- ███████████████████████████████████████████████████████ Rebuttal Rpt. at 8 (emphasis added).

Mr. Fellheimer was not involved in the negotiations and related communications between the parties concerning the build-out or potential workout discussions.  Explaining how the facts in the record fit together should be left to those who were and to the arguments of counsel.[8] *Rezulin*, 309 F. Supp. 2d at 551.    Mr. Fellheimer's narrative also relies upon severe mischaracterizations of evidence.

### 1.    CIBC's write-off of deferred interest was not the ███████ for the transfer of the Loans to the Special Loans Group

Mr. Fellheimer speculates that the ███████ for the transfer of the Loans to CIBC's Special Loans Group was the reversal of CIBC's accounting treatment of deferred interest, ███ ██████████████████████████████████ Rpt. at 8, 11, 22–23.  In support of this hypothesis, Mr. Fellheimer selectively and incompletely cites to a portion of the testimony of Douglas Brown, former Vice-President and Deputy of CIBC's Special Loans Group.  Rpt. at 9–10; Brown Dep. at 6:10–7:5.[9]  A full review of Mr. Brown's testimony reveals that declines in CIBC's internal risk ratings on the Loans dictated when the Loans were transferred to Special Loans. These ratings were downgraded incrementally over time due to the deterioration of the collateral backing the Loans.  Only the final downgrades before the transfer were related, in part, to the accounting treatment of deferred interest.  Brown Dep. at 124:3–125:7 ("Again, I'd have to go back and look at the documents, but my recollection was there was a period of deterioration in the performance of the asset group which led to downgrades to the risk rating at points in time, I

[8] Mr. Fellheimer's narrative is particularly troubling given that he reviewed only a small subset of the documents produced in discovery that was hand-picked by counsel.  *See supra* Point II.A.

[9] A copy of excerpts of the transcript of Douglas Brown's November 16, 2015 deposition is attached as Exhibit 4 to the Declaration of James C. duPont, dated May 21, 2018.  Citations to the transcript shall take the form, "Brown Dep. at __."

believe."); Brown Dep. at 118:23–120:1 ("Q. And it was transferred to special loans because the risk rating went to 85?  A. That was – yes, that was one of the drivers.").

The very documents that Mr. Fellheimer was falsely told CIBC had not produced are documents that demonstrate the downward trend in the Loans' risk ratings.  Dep. at 98:23–99:14 ("Q. Now, the risk rating for Grande Properties had been downgraded several times based on this chart from a 51 in May 2008 to an 80 in May 2013, correct?  A. That's what it says.  Q.  Okay.  So the risk rating for Grande Village was downgraded four times in that period, correct?  A. Between May of 2008 and May 2013, yes.  Q. Yes, sir, okay.  Had you seen this document prior to preparing your expert reports?  A. I don't remember seeing this.  I have to look and see if I saw this.  I don't remember seeing this.").[10]  Nevertheless, Mr. Fellheimer acknowledges, both in his report and at his deposition, that even the limited evidence he reviewed reflects the steady deterioration of the collateral supporting the Loans.  *See* Rpt. at 20 (███████████████████

████████████████████████████████████████████████████████████

███████████████████████████; Dep. at 60:10–62:20.  Mr. Fellheimer also testified that he expected the internal risk rating of the Loans to decline over time.  Dep. at 89:11–17 ("Q. Are you aware that prior to that point, the loans had been downgraded several times over the course of their existence? . . . A. No, but I would expect so.").  Notably, Mr. Fellheimer agrees that, at times, it is prudent to involve work out groups, such as the Special Loans Group, prior to the occurrence of a default.  Dep. at 113:16–23.

---

[10] The Juliano Parties were well aware of these documents, having previously shown them to Mr. Brown at his deposition.  Brown Dep. at 160:2–162:5; *see also* JP Exhibit 16, attached as Exhibit 6 to the Declaration of James C. duPont, dated May 21, 2018.  Furthermore, as previously noted, had Mr. Fellheimer reviewed the materials cited by Ms. Terrill in preparing his rebuttal to her report, he would have seen these credit memos.  *See supra*, n.6.

**2.      The transfer of the Loans to the Special Loans Group did not signal the ████████████ for the Loans**

Mr. Fellheimer next proclaims that the ████████████████████████████████ ████████████████████████ Rpt. at 23.  This "opinion," however, rests upon critical distortions of fact.  First, Mr. Fellheimer purports to rely upon testimony from Douglas Brown that at the time Special Loans assumed responsibility for the Loans, CIBC developed the objective of ████████████████████████ *Id.*  In fact, Mr. Fellheimer lifts those words from a question posed to Mr. Brown during his deposition.  Brown Dep. at 14:5–8.  Mr. Brown testified that the Special Loans Group's objective was to find an "orderly exit" from the Loans. Brown Dep. at 14:15–15:3.  Contrary to what he would have the Court believe, Mr. Fellheimer testified at his deposition that the phrase "orderly exit" means "[a]nything from a discounted payoff to a – you know, work out over time.  It means almost – it means anything other than we're going to make you another loan or litigation."  Dep. at 119:3–12.

Second, despite opining that ██████████████████████████████████████████ ██████████████████████████████████████ (Rpt. at 23), at his deposition, he conceded that workout groups do, at times, advance additional funds in order to preserve the value of collateral.  Dep. at 125:16–25.  In fact, he concedes that such advances, in some instances, may well promote CIBC's economic objectives.  Dep. at 81:7–15 ("The bank – the bank ought to act in its own – and its own economic self interest within the confines of the loan documents.").  Indeed, since the close of discovery in these Actions, CIBC has directly paid to local taxing authorities quarterly taxes owed by the Borrowers amounting to more than eight hundred thousand dollars for the preservation of its collateral.  Here, the Borrowers were eligible to extend the terms of the Loans only upon the satisfaction of certain financial performance tests, and Grande Village was eligible to receive Subsequent Advance funds only upon the satisfaction

17

of certain conditions precedent.  It was entirely within the Borrowers' control to satisfy these tests and conditions.  As long as CIBC complied with the terms of the Loan Agreements, an orderly exit of the Loans was not inconsistent with either the Loans' purpose or their terms.

Third, Mr. Fellheimer's opinion regarding the significance of the transfer to Special Loans ignores the very purpose of the Loans.  He admits that interest-only loans, such as those at issue, are generally not intended to be permanent, long-term financing.  Dep. at 71:3–8.  In other words, the decision to achieve an "orderly exit" of the Loans, in addition to being entirely consonant with the terms of the Loans Agreements, was not caused by the reversal of CIBC's accounting treatment and the transfer to Special Loans.

### 3.   CIBC did not prematurely determine that it would not release Subsequent Advance funds

Mr. Fellheimer represents that



[11]                                                                    Rpt. at 13 (citations omitted).  Mr. Fellheimer relies solely on an assertion by William Juliano purporting to recount a conversation with Mr. Mulkeen.  *See* JP Exhibit 71, attached as Exhibit 7 to the Declaration of James C. duPont, dated May 21, 2018.  However, at his deposition, Mr. Mulkeen specifically disagreed with the accuracy of the statement in William Juliano's letter that "[t]he Bank is not willing to allow any further draws on the construction escrow of approximately $1.9 million for the construction of West Marine or the State of New Jersey."  Mulkeen Dep. at 210:14–18 ("Q. Did this letter that you received from Mr. Juliano which is attached as a second page to JP-71 accurately reflect what you had communicated to Mr. Juliano?  A. No."); Mulkeen Dep. at

---

[11] Because the Court has determined that the Borrowers were not eligible to extend the term of the Loans beyond May 10, 2014, CIBC does not address this now mooted point.  *See* Op. at 74–75, Mar. 30, 2018, ECF No. 142 (14-3495 Action).

215:4–22 ("Q. What was inaccurate about the letter?  A. That the loan is due on July 15th, 2016, number one -- that's [paragraph] number 5 [in Juliano's letter].  If you look at [paragraph] number 4, he's saying that we're not willing to allow any further draws on the construction escrow of about $1.9 million.  Now, why I say that's inaccurate is that, as I mentioned previously, we were working on two different transactions.  We were working on the repayment of the loan for a number, in excess of $6 million, and we had also just approved the West Marine lease which had certain construction build-out requirements, and we were working towards making that money available, subject to the terms of the loan agreement.  So when I see a statement that we're unwilling to allow draws, I take exception to that.").[12]  Mr. Fellheimer is well aware of Mr. Mulkeen's testimony specifically refuting William Juliano's allegations and explaining that it was in CIBC's economic interest to complete the tenant improvements.  Dep. at 147:5–11.  Mr. Fellheimer should not be permitted to present as "expert opinion" the Juliano Parties' hotly disputed interpretations of evidence.

> **4.    Exhibit B to the Grande Village Mortgage, in its entirety, governs the conditions precedent for a Subsequent Advance**

Mr. Fellheimer improperly seeks to instruct the Court that Subsequent Advances were governed by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rpt. at 14, 24.  *See also United States, ex rel. Palmer v. C & D Techs., Inc.*, Civ. Act. No. 12-907, 2015 WL 4470291, at *6 (E.D. Pa. July 22, 2015) ("In the absence of specialized trade usage, expert testimony regarding proper contract interpretation is inadmissible, as is expert testimony regarding the legal significance of the contract language.") (quoting *Sparton Corp. v. United States,* 77 Fed. Cl. 1, 8 (2007)).  Moreover, Mr. Fellheimer's reading of the Grande Village

---

[12] A copy of excerpts of the transcript of Charles Mulkeen's December 16–17, 2015 deposition is attached as Exhibit 5 to the Declaration of James C. duPont, dated May 21, 2018.  Citations to the transcript shall take the form, "Mulkeen Dep. at __."

Mortgage ignores key provisions of that contract.  Specifically, Mr. Fellheimer ignores the remaining requirements and conditions precedent to a Subsequent Advance contained in Exhibit B.  *See, e.g.*, Exhibit B to Grande Village Mortgage at §§ 4, 6, attached as Exhibit 8 to the Declaration of James C. duPont, dated May 21, 2018.  At his deposition, Mr. Fellheimer acknowledged that additional paragraphs in Exhibit B governed the disbursement of Subsequent Advance funds and imposed further conditions on such advances.  *See* Dep. at 179:11–23, 182:11–183:23.[13]

### C.   Mr. Fellheimer's Personal Experience Is Insufficient to Form Reliable Opinions and His Opinions Collapse into *Ipse Dixit*

In appropriate circumstances, personal experience can form the basis of valid expert testimony, *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (S.D. Ala. 1999), but "[w]hen such testimony is based on knowledge and experience, the expert must nevertheless establish that his methodology is reliable," *Wehman*, 2015 WL 5167184, at *3.  A "curriculum vitae . . . indicative of extensive general experience in [an] industry and knowledge of a number of general [industry] and business areas" is insufficient "to indicate that [a proposed witness] has any expertise in the . . . matters that are at issue in [a particular] case," and, accordingly, courts regularly reject expert testimony as unreliable where, as here, "insufficient information has been proffered to indicate that [the proposed witness]'s personal experience is sufficiently broad to be indicative of relevant broad industry practices at the pertinent times and thus reliable in

---

[13]   In addition, Mr. Fellheimer falsely contends that CIBC improperly conditioned the disbursement of Subsequent Advance funds on the sale of Grande Village.  The Court has determined that CIBC did ***not*** impose any such condition.  *See* Op. at 36, Mar. 30, 2018, ECF No. 149 (14-3495 Action).  Nevertheless, it is alarming that a purported expert with ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Rpt. at 1, either failed to realize the significance of workout terms offered *for discussion purposes only* or was willing to regurgitate the Juliano Parties' narrative in the guise of his opinion.

connection with the determination of the matters at issue in [the] case." *Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*, No. 00 Civ. 3235, 2003 WL 21108232, at \*2 (S.D.N.Y. May 14, 2003).

Mr. Fellheimer has "knowledge of a number of general [industry] and business areas" but minimal experience that is actually relevant to the matter at issue. *Id*. While Mr. Fellheimer has a long career as a commercial litigator and some experience overseeing banking matters at the executive level, *see* Rpt. at Exhibit A, he can claim no expertise or first-hand experience in construction lending or loan workouts beyond his general experience as a practicing attorney, Dep. at 19:15–21, 26:2–19. Experience that is more specifically relevant is required. *Montefiore Med Ctr.*, 2003 WL 21108232, at \*2.

But, even if Mr. Fellheimer had sufficient relevant personal experience, his reliance on that experience is purely conjectural. He did not use his personal experience as a set of data points and then apply a reliable methodology; he simply asserts in summary fashion that his opinions are ████████████████████████████████████ Rpt. at 1. As the Advisory Committee noted concerning Rule 702, "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" FED. R. EVID. 702 advisory committee's note (2000 Amendments); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Given the absence of any identifiable standards in his report, the Juliano Parties ask the Court to simply take Mr. Fellheimer's word that his account is indicative of actual industry customs and standards. This is pure *ipse dixit* and accepting such testimony is inconsistent with the Court's role as gatekeeper.

**D.      Taken Together, Mr. Fellheimer's Factual Narrative and Opinions Amount to No More than the Arguments of Counsel**

An expert may not be proffered merely to present the arguments of counsel, or the statements of an interested party, as expert opinion. *See Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) (excluding expert because a party may not "call a witness who, after synthesizing the party's trial arguments, presents them as expert opinions").  Mr. Fellheimer has failed to conduct his own independent analysis with respect to critical facts upon which he relies.  For example, although Mr. Fellheimer opines, with respect to the March 2014 default notices, that ████████████████████████████████████████ ████████ Rpt. at 28, he admitted at his deposition that he failed to conduct any independent analysis to determine whether that was, in fact, true, Dep. at 236:16–21 ("Q. Did you go back and verify Delco's records to make sure that, in fact, Delco had provided information to the bank that the bank says it never received?  A. I did not make an independent investigation of Delco's records."); Dep. at 359:8–17 ("Q. Now, with respect to the categories of information that CIBC was requesting from the Juliano parties in March and April 2014, did you go back to the Delco records to independently verify whether they had, in fact, sent that information to CIBC?  A. No, I did not.  I looked at some of the documentation and some of the testimony, but I did not go back to the Delco basic records.").  In perhaps the most egregious violation of an expert's duties, Mr. Fellheimer admitted cribbing certain language in his report from the Juliano Parties' complaint.[14] Dep. at 223:2–7 ("Q. Did you write those words yourself or did you lift them from somewhere else?  A. I lifted them, in part, from somewhere else, but I agree with them.  Q. Did you lift it from the Complaint?  A. Yes.").

---

[14] When asked what portions of his report he authored and what portions the Juliano Parties' counsel authored, Mr. Fellheimer was instructed not to answer.  Dep. at 36:11–37:15.

## POINT III

## MR. FELLHEIMER IS NOT QUALIFIED TO OFFER HIS OPINIONS

In order to testify as an expert witness, an individual must be "qualified as an expert by knowledge, skill, experience, training, or education."  FED. R. EVID. 702.  Mr. Fellheimer purports to base his opinions on his ██████████████████████████████████ ████████ Rpt. at 1.  However, even a cursory review of his professional experience reveals that he is not uniquely qualified to offer helpful, relevant expert testimony concerning construction lending or debt restructuring.

Mr. Fellheimer is, and always has been, primarily, a commercial litigator.  *See* Dep. at 5:9–13;  FELLHEIMER & EICHEN LLP,  https://www.fellheimereichen.com/attorney/alan-fellheimer/ (last visited May 9, 2018) ("Alan focuses his practice on commercial litigation and the transactional matters that arise from it, including corporate workouts and debt restructuring. He also handles a range of matters involving regulatory compliance for banks and other financial institutions, defends clients facing white-collar criminal charges, and applies his negotiation and litigation skills to complicated family law issues.").  Mr. Fellheimer has spent 34 of the past 47 years as a practicing attorney.  Rpt. at Exhibit A.  During the years he worked in banking, he did so first as a managing director "overseeing the legal affairs" of Equimark Corporation ("Equimark"), a bank holding company, Dep. at 14:2–11, and then as the Chief Executive Officer of Equimark and Pennsylvania Business Bank, Rpt. at Exhibit A.

Mr. Fellheimer's limited experience as a bank executive with general supervisory duties for banking activities does not qualify him to testify as to the particularities of construction lending and loan workouts.  His limited debt restructuring experience arises as a litigator, not as a lender or workout officer.  *See* Dep. at 19:15–21 (he has never been an employee of a loan

23

workout group or an employee of a real estate lending group).  It is no wonder, then, that Mr.

Fellheimer's report offers nothing more than an advocate's interpretation of the facts and the

legal conclusions that, the Juliano Parties believe, should be drawn therefrom.

Mr. Fellheimer further represents that ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████  Rpt. at 3 (emphasis added).

However, Mr. Fellheimer admits, as he must, that he has no specialized or formal training in

construction financing other than reading "a lot about it" and "what [he] learned in *law school*

and in seminars."  Dep. at 26:2–19 (emphasis added).

## POINT IV

## MR. FELLHEIMER'S OPINIONS DO NOT FIT THE DISPUTED ISSUES

Rule 702 permits the use of expert testimony only where the testimony "will help the trier

of fact to understand the evidence or to determine a fact in issue."  FED. R. EVID. 702.  Part of the

court's gatekeeping role is ensuring that the proponent of expert testimony has made the

necessary showing that the expert's testimony "is relevant to the task at hand."  *Daubert*, 509

U.S. at 589, 597.  Courts in this Circuit consider this issue when analyzing the proffered expert

opinion under the "fit" prong of its three-part analysis.  *See Suter v. Gen. Accident Ins. Co. of

Am.*, 424 F. Supp. 2d 781, 787 (D.N.J. 2006) ("'Fit' requires the expert testimony to be relevant

to the issues in dispute.") (citations omitted).  Mr. Fellheimer offers the Court several opinions

that are simply not relevant to the issues at hand.

First, Mr. Fellheimer recounts that in November 2013, CIBC hired a private investigative

service ████████████████████████████████████████████  Rpt. at 16.  Mr.

Fellheimer then concludes that in providing certain information to the investigative service,

CIBC committed ███████████████████████████████ Rpt. at 17.  Mr. Fellheimer never returns to this point anywhere in his report, nor does he use it as a basis for any of the opinions that he offers.  This portion of Mr. Fellheimer's report serves no purpose other than attempting to create poor atmospherics.

Second, Mr. Fellheimer offers certain conclusions or opinions that are so sweeping, and unsupported, that they do nothing to assist the trier of fact.  For example, Mr. Fellheimer offers that ████████████████████████████████████████████████████████████████ ████████████████████████████████ Rpt. at 23 n.15.  Mr. Fellheimer also opines that ████████ ███████████████████████████████████████████████████ Rpt. at 31. Aside from offering little in the way of support for these statements, they are certainly not beyond the ken of the trier of fact to understand.

Finally, Mr. Fellheimer offers the Court the opinions that CIBC's accounting treatment of deferred interest following the 2011 Loan Modification was improper, that the 2011 Loan Modification should have been recognized immediately as a TDR in 2011, and that CIBC's "improper" accounting treatment resulted in the transfer of the Loans to Special Loans.  Rpt. at 20–23.  That CIBC's accounting treatment for deferred interest was revised and that the Loans were transferred to the Special Loans Group is not disputed.  The Juliano Parties and Mr. Fellheimer do not argue, nor can they, that the Juliano Parties were entitled to any particular accounting treatment for the Loans or that they were entitled to have the Loans administered by any particular business unit.  Such matters are internal to CIBC only.  Furthermore, if Mr. Fellheimer is correct that the 2011 Loan Modification should have resulted in a TDR, and the treatment of the Loans as impaired, the Loans would have been transferred to Special Loans in 2011.  Mr. Fellheimer fails to explain how the Loans would have been treated differently had the

2011 Loan Modification resulted in an impairment at that time other than to speculate that ███

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Rebuttal Rpt. at 3.

## CONCLUSION

For the foregoing reasons, CIBC respectfully submits that the Court should exclude Mr.

Fellheimer's proffered expert testimony in its entirety.

Dated: May 21, 2018
West Orange, New Jersey

Respectfully submitted,

/s/ Adam K. Derman
Adam K. Derman
David M. Dugan
Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, NJ 07052
Telephone: (973) 325-1500

MAYER BROWN LLP
Jean-Marie L. Atamian (*Admitted Pro Hac Vice*)
Jordan Sagalowsky (*Admitted Pro Hac Vice*)
James C. duPont (*Admitted Pro Hac Vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500

*Attorneys for CIBC INC. and Canadian Imperial Bank of Commerce, New York Agency*