GRANDE VILLAGE LLC, GRANDE
PROPERTIES, LLC, WILLINGBORO
TOWN CENTER URBAN RENEWAL
NORTH, LLC, WILLINGBORO TOWN
CENTER NORTH MANAGER, LLC,
WILLIAM T. JULIANO, and
THOMAS E. JULIANO,

        Plaintiffs,

    v.

CIBC INC. and CANADIAN
IMPERIAL BANK OF COMMERCE,
NEW YORK AGENCY,

        Defendants.

No. 1:14-cv-3495 (NLH/JS)
(consolidated)

**OPINION**

**APPEARANCES**:

DAVID L. BRAVERMAN
BENJAMIN ALEX GARBER
PETER J. LEYH
BRAVERMAN KASKEY, P.C.
ONE LIBERTY PLACE, 56TH FLOOR
1650 MARKET STREET
PHILADELPHIA, PA 19103
    On behalf of the Juliano Parties

ADAM K. DERMAN
DAVID M. DUGAN
CHIESA SHAHINIAN & GIANTOMASI PC
THE OFFICES OF CRYSTAL LAKE
ONE BOLAND DRIVE
WEST ORANGE, NJ 07052
    On behalf of CIBC

JEAN-MARIE L. ATAMIAN (admitted pro hac vice)
JORDAN SAGALOWSKY (admitted pro hac vice)
JAMES C. DUPONT (admitted pro hac vice)
MAYER BROWN LLP
1221 AVENUE OF THE AMERICAS

NEW YORK, NY 10020
    On behalf of CIBC

**<u>HILLMAN</u>, District Judge**

This is a breach of contract matter involving various loan and mortgage documents arising out of real estate developments in New Jersey. The Court assumes the parties are familiar with the background facts of this case and will not recite them here. On March 30, 2018, the Court granted in part and denied in part a motion for summary judgment. The remaining claims will be resolved at a bench trial before the undersigned.[1] On May 21, 2018, CIBC filed two motions in limine seeking to exclude the expert testimony of Alan Fellheimer and Hal Michels. For the reasons that follow, the Court will deny both motions, which seek total exclusion of the experts. The Court will, however, order restrictions on each expert's testimony and guidelines for what is permissible and what is not.

---

[1] The Court has been contemplating the use of an advisory jury in this matter. While the Juliano Parties have agreed to the use of an advisory jury, CIBC has objected. Upon considering the law, the parties' arguments and preferences, and what is required for this case to move efficiently through trial, the Court has decided not to enlist the help of an advisory jury. This case will proceed with a bench trial, with the undersigned serving as trier of fact.

**I.**

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

The Third Circuit has described the requirements of Federal Rule of Evidence 702 as a "trilogy of restrictions on expert testimony: qualification, reliability and fit." Calhoun v. Yamaha Motor Corp., 350 F.3d 316, 321 (3d Cir. 2003) (quoting Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)). "[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." Schneider, 320 F.3d at 404.

**A. Qualified**

A witness "must be qualified to testify as an expert." Calhoun, 350 F.3d at 321. This "requires 'that the witness possess specialized expertise.'" Id. (quoting Schneider, 320

F.3d at 405). However, the Third Circuit "interpret[s] this requirement liberally," and an expert can be qualified through "a broad range of knowledge, skills, and training." Id. (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)). This "liberal policy of admissibility extends to the substantive as well as the formal qualification of experts." In re Paoli, 35 F.3d at 741. The Third Circuit has "eschewed imposing overly rigorous requirements of expertise and ha[s] been satisfied with more generalized qualifications." Id.

"[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the expert does not have the specialization that the court considers most appropriate." Lauria v. AMTRAK, 145 F.3d 593, 598-99 (3d Cir. 1998) (quoting Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996)). Indeed, experts can be qualified "on the basis of practical experience alone, and a formal degree, title, or educational specialty is not required." Id. "[I]nsistence on a certain kind of degree or background is inconsistent" with Third Circuit jurisprudence. In re Paoli, 916 F.2d at 855.

### B. Reliable

An expert witness's "testimony must be reliable." Calhoun, 350 F.3d at 321. "To establish reliability, the testimony 'must be based on the methods and procedures of science rather than on

subjective belief or unsupported speculation; the expert must have good grounds for his . . . belief.'" Furlan v. Schindler Elevator Corp., 516 F. App'x 201, 205 (3d Cir. 2013) (quoting Schneider, 320 F.3d at 404). "In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court charged trial judges with the responsibility of acting as 'gatekeepers' to exclude unreliable expert testimony." Calhoun, 350 F.3d at 320-21 (quoting Daubert, 509 U.S. at 597).

Federal Rule of Evidence 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

"[E]xperts in various fields may rely properly on a wide variety of sources and may employ a similarly wide choice of methodologies in developing an expert opinion." Cooper v. Carl A. Nelson & Co., 211 F.3d 1008, 1020 (7th Cir. 2000).

"[T]here may be some circumstances where one's training and experience will provide an adequate foundation to admit an opinion and furnish the necessary reliability to allow a jury to consider it . . . ." Oddi v. Ford Motor Co., 234 F.3d 136, 158

(3d Cir. 2000). "Cases where courts have allowed testimony based on the experience of the expert often involve testimony as to custom and practice that has been acquired via such experience." W. Am. Ins. Co. v. Jersey Cent. Power & Light Co., No. 03-6161, 2008 WL 5244232, at *8 (D.N.J. Dec. 15, 2008).

**C. Fit**

"As for fit, 'the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.'" Furlan, 516 F. App'x at 205 (quoting Schneider, 320 F.3d at 404).

> This standard is not intended to be a high one, nor is it to be applied in a manner that requires the plaintiffs "to prove their case twice – they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable."

Oddi, 234 F.3d at 145 (quoting In re Paoli, 35 F.3d at 744).

## II. CIBC's Motion in Limine to Exclude Testimony of Expert Alan Fellheimer

CIBC asks the Court to exclude Fellheimer's testimony in its entirety. The Court groups CIBC's arguments into the following broad categories: (1) Fellheimer improperly asserts several legal conclusions and opines on intent and state of mind; (2) he is unqualified, as he is more commercial litigator than banker; and (3) his testimony is unreliable.

### A. Scope of Testimony

CIBC argues Fellheimer's report contains legal conclusions, for example that the Juliano Parties were never in default, that CIBC violated the loan documents, and that CIBC acted in bad faith. They also argue Fellheimer repeatedly opines on the state of mind of CIBC's employees, such as stating that CBIC's only objective was to exit the loans, that CIBC was never interested in a sale of the loans, and that CIBC never intended to make financing available under the Subsequent Advance. The Juliano Parties appear to admit at least that Fellheimer's statement that CIBC acted in bad faith in its handling of the loans is beyond the scope of expert testimony. (Opp. Br. 23 ("Here, there are limited instances where Mr. Fellheimer's report may contain statements that is beyond the permissible scope of Rule 704 – as, for instance, where he states that 'CIBC acted in bad faith toward the Juliano Parties in connection with its handling of the Loans,' in breach of the implied covenant of good faith and fair dealing.")).

The Court will not allow Fellheimer to draw legal conclusions in his testimony before this Court. Federal Rule of Evidence 704(a) provides: "An opinion is not objectionable just because it embraces an ultimate issue." "Although Federal Rule of Evidence 704 permits an expert witness to give testimony that 'embraces an ultimate issue to be decided by the trier of fact,'

an expert witness is prohibited from rendering a legal opinion." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006). "[T]he line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." Id. at 218.

The Third Circuit has approved of the use of an expert testifying as to bank customs and practices. See First Nat'l State Bank v. Reliance Elec. Co., 668 F.2d 725, 731 (3d Cir. 1981) ("[T]he trial judge permitted the testimony to provide the jury with information on bank customs and to assist the trier of fact with bank and industry practices."). While the district court in that case allowed testimony as to "custom in the banking industry," it did not allow "opinion as to the legal duties arising therefrom." Id.

> [A]ny qualified expert . . . may provide an opinion on whether a party's conduct or actions meet the underlying bases for an ultimate issue in a case (by, for example, testifying concerning whether certain acts would in the abstract be improper and/or inconsistent with a party's legal duties), but may not merely instruct the jury on the result to reach based upon a party's specific conduct or actions (by, for example, stating that a party did indeed violate an applicable duty through certain actions).

Krys v. Aaron, 112 F. Supp. 3d 181, 193 (D.N.J. 2015).

Here, Fellheimer's proffered testimony consists not only of opinions relating to sound banking customs, but crosses over to make legal conclusions regarding breaches of the loan documents by CIBC and to opine that CIBC acted in bad faith. He also improperly opines on CIBC's collective state of mind in its treatment of the loans. See id. at 203 ("[E]xperts may not provide testimony concerning 'the state of mind' or 'culpability' of Defendants."). It is this Court's job to reach legal conclusions and, as the trier of fact, to make findings of fact regarding intent and state of mind. To the extent Fellheimer seeks to do so, such testimony will be excluded. In the same vein, Fellheimer is prohibited from relying on any caselaw in his testimony.

### B. Qualifications

CIBC argues Fellheimer is first and foremost a commercial litigator. The Court has acquainted itself with Fellheimer's background and experience in banking and is convinced he is appropriately qualified to testify as an expert on sound banking practices. Fellheimer served as Chairman and CEO of Pennsylvania Business Bank and Equimark Corporation, a NYSE Bank Holding Company. The Court is cognizant that Fellheimer also has an equally extensive career in the law. That banking is not Fellheimer's only area of expertise does not in and of itself make his expert testimony in this case inappropriate.

Fellheimer's deposition makes clear that he has experience in negotiating loan agreements with borrowers and his experience is more expansive than CIBC makes it out to be. The Court finds Fellheimer has sufficient experience in banking to qualify him as an expert in this matter. The Court is not convinced that Fellheimer's legal background and experience as a commercial litigator is an appropriate basis for excluding his testimony. The Court concludes that cross-examination will provide sufficient means for CIBC to question whether any opinion offered by Fellheimer exceeds his qualifications.

The Court also notes that its impression of Fellheimer's reports was that they were more advocacy pieces than expert reports. The Juliano Parties, in their examination of Fellheimer, are cautioned that his only role in this litigation is as an expert witness and not as counsel to, or an advocate for, the Juliano Parties. His testimony must reflect this important but limited role.

**C. Reliability**

The Court finds similarly with regard to CIBC's argument that Fellheimer's testimony is based on an incomplete record. The Juliano Parties admit that Fellheimer did not review all of the materials in this matter, but argue he reviewed a substantial amount. The Court agrees that this is not a basis to exclude Fellheimer's testimony. See Taylor v. Danek Med.,

Inc., No. 95-7232, 1999 WL 310647, at *2 (E.D. Pa. May 10, 1999) ("Defendants' contentions that Dr. Shady did not review all of the relevant medical records goes to the weight of his testimony, rather than the admissibility."). As the Court noted at its June 20, 2018 hearing, Federal Rule of Evidence 702 requires that expert testimony be "based on sufficient facts or data." "Sufficient" implies that expert testimony can be based on less than the entire universe of facts or data that could be provided to the expert. The Court is convinced Fellheimer has considered sufficient facts and data and, to the extent CIBC disagrees, it may probe what materials were not reviewed on cross-examination.[2] To the extent Fellheimer might testify that there is "no evidence" or "nothing in the record" to support a conclusion, CIBC may challenge that assertion on cross-examination by referencing evidence that may not have been taken into consideration.

CIBC also argues Fellheimer's testimony relies on "severe mischaracterizations of evidence." CIBC appears to be identifying weaknesses in Fellheimer's analysis and registering disagreement with his conclusions, which are not bases for

---

[2] To the extent CIBC argues certain documents were kept from Fellheimer by the Juliano Parties, this can be assessed on cross-examination as well. If CIBC believes review of such documents would change Fellheimer's opinions, cross-examination allows CIBC the opportunity to provide such omitted documents and elicit a potentially more informed opinion.

excluding his testimony.  See, e.g., Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 544 (1st Cir. 1988) ("The burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion."); Medina v. Daimler Trucks N. Am., LLC, No. 10-623, 2015 WL 1472156, at *4 (D.N.J. Mar. 31, 2015) ("The alleged weaknesses of [the expert]'s opinions are best left to the consideration of the jury, presented through cross-examination and other appropriate evidence at trial.").

As to CIBC's argument that Fellheimer's testimony lacks any reliable methodology and identifiable standards, the Court finds Fellheimer relies on an admittedly broad, but well-understood and well-established standard of "sound banking practice." See Oddi, 234 F.3d at 158; W. Am. Ins. Co., 2008 WL 5244232, at *8.

Lastly, the Court finds the accounting treatment of the loans to be relevant and fit the issues of the case, particularly in determining whether there was a breach of the covenant of good faith and fair dealing with respect to the transfer and treatment of the loans by Special Loans.

### III. CIBC's Motion in Limine to Exclude the Testimony of Hal Michels

The Court groups CIBC's arguments in support of excluding Michels's testimony into the following broad categories: (1) Michels is not an independent and objective expert witness; (2)

Michels exceeds the scope of permissible expert testimony; and (3) his damages calculations are fundamentally flawed.

**A. Independence and Objectivity**

CIBC argues Michels's testimony should be excluded because of his longstanding business relationship with the Juliano Parties. They argue Michels has been providing personal accounting services to the Juliano Parties for twenty years and that they are one of his largest clients. CIBC argues Michels's personal income is tied to his work for the Juliano Parties and, thus, the outcome of this litigation will impact Michels's financial interests. The Juliano Parties argue they are not Michels's largest clients and point to Michels's deposition testimony that he does not believe that a bad outcome at trial would result in less work for his firm.

The Court finds that any financial interest Michels has in the outcome of this litigation is not direct. Rather, it is based on the attenuated assumption that he will get less business from the Juliano Parties if they are unsuccessful at trial. The Court does not find this an appropriate basis for excluding Michels's testimony. Any financial interest Michels may have can be parsed out on cross-examination and the Court will weigh it in its assessment of the credibility of his testimony as appropriate. As this Court indicated at its June 20, 2018 hearing, while usually in the context of compensation,

financial interests relevant to expert testimony at trial are commonly reserved for cross-examination and not utilized as a basis for exclusion of testimony in whole.

CIBC also argues Michels's prior work is "inextricably intertwined in his opinions" and that he prepared the majority of the Juliano Parties' personal financial statements, which are at issue in this case. The Court's summary judgment opinion determined that analysis of the December 31, 2013 financial statement is relevant in determining whether there was a material breach of the guarantees. CIBC acknowledges that Michels was not involved in the preparation of this particular financial statement.

CIBC also argues Michels relies on the Juliano Parties' representations on disputed fact issues, rather than the evidence in the case. Michels's reliance on the Juliano Parties' representations can similarly be probed on cross-examination. Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002) ("Rule 703 places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination."); see also Keller v. Feasterville Family Health Ctr., 557 F. Supp. 2d 671, 680 (E.D. Pa. 2008) ("As with any factual dispute, the jury will exercise its traditional function

of weighing all of the evidence and giving expert testimony whatever weight, if any, it merits.").

**B. Scope of Testimony**

CIBC argues Michels was only identified as a rebuttal expert, and that he should not be permitted to offer independent expert testimony outside the scope of rebuttal. CIBC argues the entirety of his testimony should be excluded because "the only arguably relevant opinions in the Report are beyond the scope of rebuttal testimony."

> While rebuttal reports and reply reports "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert . . . expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that report, do not qualify as proper rebuttal."

Haskins v. First Am. Title Ins. Co., No. 10-5044, 2013 WL 5410531, at *2 (D.N.J. Sept. 25, 2013) (quoting Withrow v. Spears, No. 12-06, 2013 WL 4510305, at *12 (D. Del. Aug. 22, 2013)).

The Court has reviewed both Michels's rebuttal report and Craig P. Casey, CPA's expert report. The Court finds Michels's conclusions as to the calculation of the Juliano Parties' damages to be within the scope of rebuttal. Casey states in his report: "[T]he evidence demonstrates that the Juliano Parties did not incur losses as a result of CIBC's actions." He then

identifies other factors that could have caused a loss for the Juliano Parties, namely economic challenges and construction delays. Michels's report both addresses these other factors and calculates the losses of the Juliano Parties. The Court finds this to be within Michels's permissible rebuttal of Casey's conclusion that the Juliano Parties "did not incur losses."[3] To the extent CIBC believes there to be other areas in which Michels opines beyond the scope of rebuttal, those concerns may be addressed at trial.

CIBC also argues Michels's report contains legal conclusions, such as stating that CIBC acted in bad faith and breached the loan documents. As with Fellheimer, the Court will not allow Michels to testify as to legal conclusions in his expert testimony. Further, Michels's statements that merely echo the conclusions reached by Fellheimer or attempt to reach beyond his accounting experience, such as what might or might not constitute sound banking practice, will not be permitted.

### C. Damages Calculations

The Court does not find any of CIBC's arguments regarding Michels's calculation of damages to be convincing. Broadly,

---

[3] To the extent CIBC believes it is being prejudiced by the Court allowing Michels to testify as to a calculation of the Juliano Parties' damages, CIBC may, if it chooses, file a letter with this Court requesting leave to prepare and submit a supplemental report from Casey limited solely to that aspect of Michels's rebuttal report.

they argue that his calculations are "fundamentally flawed." Any such flaws in his calculations are ripe for cross-examination. Many of CIBC's arguments further appear to attack the Juliano Parties' theory on damages at trial more so than whether Michels's testimony is permissible, such as the mitigation of damages issue. These issues should also be addressed at trial.

## IV.

The Court will allow both Fellheimer and Michels to testify at trial, with the limitations discussed above. The Court is reinforced in its decision to allow these experts to testify in that this case is proceeding as a bench trial, in which the undersigned is the trier of fact. CIBC's arguments for excluding testimony carry substantially less weight when the Court acts as fact-finder. "[W]here the Court itself acts as the ultimate trier of fact at a bench trial, the Court's role as a gatekeeper pursuant to Daubert is arguably less essential." Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp. 2d 584, 596 n.10 (D.N.J. Jan. 4, 2002); accord Warner Chilcott Labs. Ir., Ltd. v. Impax Labs., Inc., Nos. 08-6304, 09-2073, 09-1233, 2012 WL 1551709, at *23 (D.N.J. Apr. 30, 2012) ("[T]he gatekeeping function of the court is relaxed in the context of a bench trial because a court is better equipped than a jury to weigh the probative value of expert evidence."); Alco Indus. v.

Wachovia Corp., 527 F. Supp. 2d 399, 405 (E.D. Pa. 2007) ("In the context of preparing for a bench trial, it is not necessary to apply the Daubert standard with full force in advance of trial. Rather, the court has the flexibility to allow testimony provisionally and revise its view once the testimony is taken." (citation omitted) (citing In re Salem, 465 F.3d 767, 777 (7th Cir. 2006))); Gannon v. United States, 571 F. Supp. 2d 615, 616 (E.D. Pa. 2007) ("In a bench trial, th[e] Court's 'role as gatekeeper pursuant to Daubert is arguably less essential' because a judge rather than a jury is the fact finder." (quoting Clark v. Richman, 339 F. Supp. 2d 631, 648 (M.D. Pa. 2004))).

The Court will deny both motions in limine but will impose those restrictions outlined above. An appropriate Order will be entered.

Date: June 22, 2018     s/ Noel L. Hillman
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.